**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Evanston Insurance Company,<br><br>  Plaintiff,<br><br>vs.<br><br>Hearthstone of Sun City, LLC; et al.,<br><br>  Defendants.<br>_____<br>Lexington Insurance Company,<br><br>  Plaintiff,<br><br>vs.<br><br>Hearthstone of Sun City, LLC; et al.,<br><br>  Defendants.<br>_____ | No. CV-08-1632-PHX-FJM<br>No. CV-09-0109-PHX-MHM<br><br>**ORDER** |

We now have before us Lexington Insurance Company's motion for summary judgment (doc. 99), defendants Hearthstone of Sun City, LLC, HSC Property, LLC, Unispec Facilities Management and Pamela Tyler's (collectively, "Hearthstone") response (doc. 116), and Lexington's reply (doc. 122); Hearthstone's motion for summary judgment (doc. 101), Lexington's response (doc. 112), and Hearthstone's reply (doc. 120). We also have before us Lexington's motion to strike experts (doc. 103), Hearthstone's response (doc. 118), and Lexington's reply (doc. 119).

**I**

This case is a consolidation of two declaratory judgment actions filed by two insurance companies that provided consecutive professional and general liability insurance coverage to Hearthstone of Sun City, a care facility for elderly people. Evanston Insurance Company issued a claims-made policy effective January 30, 2006 to January 30, 2007. Lexington Insurance Company issued a claims-made policy for the period of January 30, 2007 to January 30, 2008. Henry Ernico was a resident at the Hearthstone facility from November 19, 2006 to January 16, 2007. On January 29, 2007, one day before the Evanston policy was to expire, Hearthstone sent Evanston and Lexington a "Possible Claim Reporting Log" containing 112 "claims or possible claims," including a notation for Henry Ernico—"Unavoidable wound progression, son is an attorney, he has requested form to obtain medical records. Have not rec'd formal request to date." Mr. Ernico died in February 2007, approximately one month after his discharge from Hearthstone. Mr. Ernico's family filed a lawsuit against the Hearthstone defendants on November 9, 2007, asserting claims of negligence, wrongful death, and vulnerable adult abuse and neglect under the Adult Protective Services Act, A.R.S. §§ 46-454 and 455. Evanston and Lexington filed separate declaratory judgment actions seeking a declaration that each has no duty to defend or indemnify the Hearthstone defendants under their respective insurance policies.

On April 7, 2009, finding that the two cases shared common questions of law and fact, we consolidated the Evanston and Lexington actions (doc. 67). Evanston and the Hearthstone defendants have since reached a settlement of all claims and counterclaims and Evanston was dismissed from this action on December 14, 2009. The only issue remaining is whether Lexington has a duty to defend and indemnify Hearthstone in the Ernico litigation.

**II**

Lexington first moves to strike Hearthstone's designation of expert witnesses Frederick C. Berry, Jr. and Stanley Feldman for Hearthstone's failure to comply with Rule 26(a)(2)(C), Fed. R. Civ. P., and with the expert disclosure deadlines set by our May 22, 2009 order (doc. 78). Hearthstone objects to the motion to strike only as it relates to

Frederick C. Berry, Jr., impliedly consenting to the granting of the motion to strike witness Stanley Feldman. See LRCiv 7.2(i). Accordingly, Lexington's motion to strike the designation of expert witness Stanley Feldman is granted.

On May 22, 2009, we ordered Lexington to disclose its expert witnesses no later than June 15, 2009, Hearthstone to disclose its experts no later than July 15, 2009, and Lexington to disclose its rebuttal expert testimony no later than July 31, 2009. On June 15, 2009, Lexington served its expert disclosure statement. Then, on July 31, 2009 (after its July 15, 2009 deadline), Hearthstone served its "First Expert Disclosure," identifying Frederick C. Berry, Jr. as an expert and attaching a written expert report. Hearthstone now attempts to circumvent its expert disclosure deadline by characterizing its disclosure as "rebuttal testimony" within the prescribed deadline. It asserts that Berry will be used only to rebut the testimony of Lexington's expert and therefore the disclosure of his report on July 31, 2009 was timely. But as the defendant, Hearthstone was not entitled to submit rebuttal expert testimony. The scheduling order was constructed to allow the plaintiff the opportunity to depose the defendant's designated expert and then disclose its rebuttal evidence before trial. Instead, Hearthstone submitted its expert designation and report on the rebuttal deadline. The opportunity for Lexington to submit its rebuttal testimony has passed. Moreover, Hearthstone's expert report is drafted as a presentation for its case-in-chief, not as rebuttal to Lexington's expert. Because Hearthstone failed to disclose its experts within the deadline set by our order, the motion to strike experts Berry and Feldman is GRANTED (doc. 103).

**III**

The Lexington policy provides that Lexington will indemnify Hearthstone for damages it is required to pay "resulting from a medical incident arising out of professional services provided by any Insured" during the coverage period. PSOF, ex. 1. There is no dispute that the Ernico lawsuit arises from a "medical incident" that occurred during the coverage period. The Lexington policy, however, also contains a "prior acts exclusion" which provides:

We will not defend or pay claims for:

1. Prior Acts

> Any Liability arising out of acts, errors or omissions of which an Insured had knowledge prior to the inception date of the policy period, if, as of such date, an Insured could reasonably foresee a claim might result.

Id. In cross motions for summary judgment, the parties dispute whether the January 29, 2007 claim log demonstrates that Hearthstone could have reasonably foreseen the Ernico claim prior to the inception of the Lexington policy period.

Lexington first argues that Hearthstone has admitted in its responsive pleading to Evanston's motion for summary judgment that the January 2007 claim log notation regarding Henry Ernico was "a claim" and that therefore Hearthstone is now precluded from taking a contrary position. In its responsive pleading, Hearthstone stated that the facts show that "a claim was made during the [Evanston] Coverage Period," doc. 28 at 3, and that the Ernico "notation . . . is clearly a [claim] triggering coverage under the [Evanston] Policy." Id. at 8.[1]

The doctrine of judicial estoppel prevents a party from taking an inconsistent position in successive or separate actions, provided that the party was successful in the prior proceeding. State v. Towery, 186 Ariz. 168, 182, 920 P.2d 290, 304 (1996). Even if we assume that the consolidated cases were "separate proceedings" for purposes of the rule, we nevertheless conclude that the doctrine does not apply. A party is successful in the prior proceeding "only if the party gained judicial relief as a result of asserting the particular position in the first proceeding." Id. at 183, 920 P.2d at 305. The Evanston action was resolved by settlement, and not because judicial relief was granted based on the prior inconsistent position.

---

[1]Lexington also relies on Hearthstone's statement that "both Hearthstone and Evanston were aware of the claim as early as March 28, 2006." Doc. 28 at 10. Hearthstone has since filed a notice of errata asserting that the statement was incorrect and explaining that Mr. Ernico was not even admitted to the Hearthstone facility until November 19, 2006, making it impossible for Hearthstone to have been "aware of the claim as early as March 28, 2006." See doc. 115. The statement, thus, is obviously incorrect and cannot serve as an admission of Hearthstone's knowledge.

- 4 -

1    Moreover, the circumstances of this case dictate against estoppel. Hearthstone
2 submitted its claim log to both insurance companies one day before the insurance transitioned
3 from Evanston to Lexington. It was clear that one company was responsible for coverage
4 of the Ernico claim. Nevertheless, both companies denied coverage and put Hearthstone in
5 the position of defending two declaratory judgment actions. It was reasonable for
6 Hearthstone to assert alternative theories of coverage under each policy, particularly given
7 that the statements at issue were made in response to a motion that was filed before any
8 discovery was conducted. Indeed, because of the undeveloped state of the evidence,
9 Evanston's motion for summary judgment was denied and Hearthstone's Rule 56(f) motion
10 for additional discovery was granted (doc. 65). Judicial estoppel is not warranted in this
11 case.

12    Lexington also contends that Hearthstone's contemporaneous characterizations of the
13 2007 claim log, as well as the nature of the documents themselves, support as a matter of law
14 a conclusion that Hearthstone foresaw that a claim might result from the Ernico incident. On
15 January 29, 2007, prior to the inception of the Lexington policy, Glenn de Souza, the
16 principal officer of Hearthstone, emailed Steven Shawbel, Evanston claims representative,
17 and Doug Nelson, a claims agent for Lexington, a document entitled "Possible Claim
18 Reporting Log January 2007." PSOF ¶¶ 6-7. One of the accompanying emails stated "I have
19 attached two logs of *claims and potential claims* for Hearthstone of Sun City and Hearthstone
20 of Mesa. Please let me know if you have questions about these claims." Id., ex. 4 (emphasis
21 added). Mr. de Souza also admitted in his declaration that he created the claim log "[i]n
22 fulfillment of Hearthstone's obligation to notify its insurer of any potential or actual claims
23 made on a timely basis." DSOF, ex. 1, ¶ 6.

24    When Hearthstone was eventually served with a formal lawsuit in the Ernico matter,
25 Mr. de Souza forwarded the complaint to his Lexington insurance agent. In the transmittal
26 letter, he stated "[w]e also recommend tendering the claim to our former carrier (Evanston
27 Insurance Company) *who was notified of this claim* near the end of our policy period." Id.,
28 ex. 5 (emphasis added).

Lexington contends that based on this evidence it is clear as a matter of law that, prior to the inception of the Lexington policy, Hearthstone was aware of the Ernico claim, or at least could have reasonably foreseen that a claim might result. Accordingly, Hearthstone contends that the prior acts exclusion precludes coverage for the Ernico litigation.

Hearthstone counters that the January 2007 claim log contained entries for approximately 112 incidents, including a broad mix of medical record requests, patient or family complaints, and other incidents occurring at the facility. It contends that the items listed in the log were included in order to comply with a variety of state and federal regulations requiring a licensed healthcare provider to maintain a log of grievances and requests for medical records, unrelated to the insurance underwriting process. DSOF ¶¶ 9-10. According to Hearthstone, there was no information available as of the effective date of the Lexington policy that would have reasonably alerted Hearthstone that Mr. Ernico or his son were dissatisfied with Mr. Ernico's care during his stay, or were planning to file a claim. While the log contains multiple entries specifically documenting patient or family complaints, the Ernico entry indicates only that Mr. Ernico's son had requested a form in order to receive medical records.[2] Moreover, the log entry notes that Mr. Ernico's wound progression was "unavoidable," demonstrating Hearthstone's belief that Mr. Ernico had not suffered an actionable injury.

The ultimate issue is whether, based on the information known to Hearthstone prior to the inception of the Lexington policy, Hearthstone could have reasonably foreseen that the Ernico incident might result in a claim. Based on the record before us, we conclude that reasonable persons could differ as to whether such a claim might result. Therefore, summary judgment is not appropriate.

---

[2] Jeffrey Ernico recently submitted an affidavit stating that in requesting his father's medical records, he had no intention of making a claim against Hearthstone. Instead he made the request in order to facilitate his father's transfer to another facility. DSSOF, exhibit 1. Because Hearthstone does not suggest that it was aware of this information before the inception of the Lexington policy, the relevance of Mr. Ernico's affidavit is questionable.

**IV**

Lexington also moves for summary judgment on Hearthstone's claims for bad faith and punitive damages. Hearthstone does not object to Lexington's motion with respect to the punitive damages claim. Therefore, it is granted.

Hearthstone alleges in its counterclaim that Lexington breached its duty of good faith and fair dealing by "expressly and repeatedly denying that it owed a duty to defend and indemnify [Hearthstone]." Counterclaim ¶¶ 12, 19. Hearthstone does not challenge Lexington's motion for summary judgment on the bad faith claim as it was originally asserted. Instead, for the first time in its response to Lexington's motion, Hearthstone characterizes its bad faith claim in the context of Lexington's recent refusal to settle the underlying Ernico litigation. But this claim is based upon entirely distinct factual allegations than that of the original claim. Hearthstone cannot assert a new claim at this late stage of the litigation.

We agree that there is no basis for the bad faith claim. As evidenced by our denial of both parties' motions for summary judgment, Lexington's obligation under the policy is a close question. Hearthstone cannot show that Lexington lacked any reasonable basis for denying benefits under the policy. See Noble v. National Am. Life Ins. Co., 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981). Lexington's motion for summary judgment on the bad faith claim is granted.

**V**

**IT IS ORDERED GRANTING IN PART AND DENYING IN PART** Lexington's motion for summary judgment (doc. 99). Lexington's motion is denied with respect to its claim that it has no obligation to defend or indemnify Hearthstone. It is granted with respect to Hearthstone's claims for bad faith and punitive damages.

1 **IT IS ORDERED DENYING** Hearthstone's motion for summary judgment (doc. 101).

**IT IS FURTHER ORDERED GRANTING** Lexington's motion to strike Hearthstone's experts (doc. 103).

DATED this 28th day of January, 2010.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge